ALABAMA POWER COMPANY, a
corporation, Plaintiff,

v.

ALABAMA ELECTRIC COOPERATIVE,
INC., a corporation, Rural Electrification Administration, Norman M. Clapp,
Administrator of the Rural Electrification Administration, the United States
Department of Agriculture, and Orville
L. Freeman, Secretary of the United
States Department of Agriculture, Defendants.

Civ. A. No. 2193–N.

United States District Court
M. D. Alabama, N. D.

July 13, 1965.

Martin, Balch, Bingham, Hawthorne & Williams, Birmingham, Ala., for plaintiff.

Rushton, Stakely & Johnston, Montgomery, Ala., L. A. Beers, Jr., Andalusia, Ala., and Volpe & Boskey, Washington, D. C., for defendant Alabama Electric Cooperative, Inc.

Ben Hardeman, U. S. Atty., and Rodney R. Steele, Asst. U. S. Atty., Montgomery, Ala., for remaining defendants.

JOHNSON, District Judge.

This is an action by the Alabama Power Company against Alabama Electric Cooperative, Inc., the Rural Electrification Administration, Norman M. Clapp, Administrator of the Rural Electrification Administration, the United States Department of Agriculture, and Orville L. Freeman, the Secretary of the United States Department of Agriculture, asking this Court to enjoin the defendants from

consummating a proposed loan of $20,-350,000 to the Alabama Electric Cooperative, Inc., which loan was approved by the Administrator of the Rural Electrification Administration on October 31, 1961.[1] Each of the defendants has filed motions asking this Court to dismiss the complaint and in the alternative for summary judgment. The Alabama Power Company has moved for a preliminary injunction prohibiting the defendants from consummating the loan. Each of these several motions is now submitted upon the pleadings, the affidavits and the several exhibits thereto, which were timely and properly filed with the Clerk of this Court, and the briefs and arguments of the parties.

The Alabama Power Company is a public utility corporation organized under the laws of the State of Alabama and is authorized by its charter to generate, transmit and sell electric energy throughout the State of Alabama. It possesses certificates of convenience and necessity from the Alabama Public Service Commission for the construction of its several steam and hydroelectric generating plants, together with connecting transmission facilities located throughout the State of Alabama, exclusive of a section in north Alabama where electric service is supplied by the Tennessee Valley Authority. In addition, the Alabama Power Company holds nonexclusive franchises from 56 counties and 257 municipalities in the State of Alabama. It is in these counties and municipalities that the Alabama Power Company conducts its electrical operations.

The AEC was organized and exists under the Alabama Electric Cooperative Act (Title 18, § 31 et seq., Code of Alabama, Recompiled). The cooperative is composed of twenty members, the membership consisting of two industrial consumers served at retail by the cooperative, six Alabama municipalities owning distribution systems served at wholesale by the cooperative, and twelve electric cooperatives, which furnish electric energy through distribution systems financed by the REA pursuant to Section 4 of the Act (7 U.S.C.A. § 904). At present, two of the member cooperatives receive all their electric power requirements at wholesale from the AEC; four obtain part of their power requirements at wholesale from the AEC, and the remainder from the plaintiff, Alabama Power Company, or Gulf Power Company; the other six member cooperatives at the present time obtain all their power requirements from either the Alabama Power Company or the Gulf Power Company. The AEC was organized by electric distribution cooperatives for the purpose of providing themselves with electric power and energy needed by them to satisfy the electrical requirements of their member-consumers. The power presently being supplied by the Alabama Power Company to the distributing cooperatives is provided pursuant to 5-year contracts, each of which has been approved by the Alabama Public Service Commission. The revenues received by the Alabama Power Company from the sale of the electric power to these cooperatives is substantial; for example, the revenue received by the Alabama Power Company from these cooperatives increased from over $1½ million in 1960 to approximately $2⅓ million in 1964. There is no question that the Alabama Power Company has made a substantial investment in its electric system, including its transmission lines and substations. This investment has been for the purpose of providing electric power requirements to its customers, including the cooperatives. The Alabama Power Company has offered and continues to offer the sale of electric power to these cooperatives at the same rates at which it has sold power to such cooperatives since the last rate established and approved by the Alabama Public Service Commission. In addition to the transmission and sale of electric power to the distributing cooperatives, the Alabama Power Company since 1944

---

1. For brevity, the Rural Electrification Administration will be hereinafter referred to as the "REA" and the Alabama Electric Cooperative, Inc., as the "AEC."

has supplied a substantial portion of the electric power required by the defendant AEC and as with the cooperative that distributes the power, the Alabama Power Company has offered and continues to offer to supply the AEC its deficit power requirements in order to fulfill the needs of its customers.

In October, 1959, the AEC initiated an application to the REA for the purpose of obtaining a loan in an amount in excess of $20 million for the purpose of constructing a generating plant in southwest Alabama, together with several hundred miles of transmission lines and related substations to be used to provide electric energy to the several member distributing cooperatives, which energy was at that time, and is presently, being provided by the Alabama Power Company and by Gulf Power Company. This loan application was revised in April, 1961. The revision is inconsequential insofar as the issues now presented to this Court are concerned. In connection with the processing of this revised loan application, the REA instructed the AEC to obtain from each of the electric distribution cooperatives wholesale power supply agreements requiring each of such cooperatives for a period of thirty-five years to purchase all their wholesale power requirements from the defendant AEC and to require such distributing cooperatives to discontinue the purchase of power from any supplier other than AEC. Accordingly, the AEC undertook to and did obtain the contracts from the distributing cooperatives. Subsequently, the defendant Norman M. Clapp, Administrator of REA, entered into a contract on behalf of the United States of America with the defendant AEC, this contract being dated July 31, 1961, whereby an agreement was made to lend $20,-350,000 to AEC for the purposes aforestated. The loan commitment was made subject to the conditions that AEC secure written approval from the Director of Finance for the State of Alabama and that AEC complete the 35-year wholesale power supply contracts with the distributing cooperatives. Subsequently, AEC filed its petition with the Director of Finance for the State of Alabama, seeking an order from the director to the effect that the proposed project serves a public need and is in the public interest and that the issuance of obligations on the part of AEC in the amount of $20,-350,000 and the use of the proceeds of such loan for such purpose would further the corporate purposes of AEC.

The Alabama Power Company intervened in the proceedings before the Alabama Director of Finance, this intervention occurring some three years ago; the basis for the intervention by the Alabama Power Company in that proceeding was that the proposed loan would not serve a public need, nor be in the public interest; that the Alabama Power Company had adequate facilities to supply and would supply the power needs of consumers to be served by facilities to be financed with the loan; that the proposed generating and transmission system is unnecessary and will constitute duplication of the Alabama Power Company's electric system; that the loan is in violation of the central station service limitation of the Rural Electrification Act; that the interest charge on the loan is less than the United States must pay on its borrowings, and several other grounds not considered to be material to the issues now presented. After extensive proceedings, the Director of Finance for the State of Alabama on January 9, 1963, rendered a decision in favor of the AEC and specifically found that the proposed project by the AEC and the loan that was being obtained by that cooperative from the REA would serve a public need and would be in the public interest. On the same day the Alabama Director of Finance rendered his decision, the Alabama Power Company filed a petition in the Circuit Court of Montgomery County, Alabama, seeking a judicial review in the Alabama State court of the action of the Director of Finance. In July, 1963, the Circuit Court of Montgomery County, Alabama, quashed the order of the Director of Finance and remanded the case to him.

From this order the AEC appealed to the Supreme Court of Alabama, and in September, 1964, the Supreme Court of Alabama reversed the Circuit Court and upheld the approval by the Director of Finance of the AEC proposal. Subsequently, the Alabama Power Company on two occasions applied to the Supreme Court of Alabama for a rehearing. In each instance the application was denied. The complaint in this Court was filed one day after the Supreme Court of Alabama denied the initial application of the Alabama Power Company for a rehearing.

■■■ As stated above, Section 4 of the Rural Electrification Act, Title 7, Section 904, U.S.C.A., authorizes the administrator "to make loans * * * for the purpose of financing the construction and operation of generating plants, electric transmission and distribution lines or systems for the furnishing of electric energy to persons in rural areas who are not receiving central station service * * *." From the Act itself and from its legislative history, it is quite clear that the congressional intent was to benefit those persons in rural areas who were in need of electric power; the Act was in no way intended to benefit or confer enforceable rights upon the Alabama Power Company or others of its class. The Act, therefore, contains no provision for any notice or hearing or intervention for the challenging of loans to be made under the Act. On this basis this Court concludes that the motions of the AEC, the REA and the other defendants, to dismiss this action, should each be granted for the reason that the Alabama Power Company lacks standing to maintain this action.

A close study of the complaint in this case and the arguments and briefs filed by the Alabama Power Company in support thereof, reflects that the Alabama Power Company's sole complaint is the injury it fears from the competition that it says will result from the electrical facilities to be provided by the AEC by the use of the REA's loan. The law is clear that where prior REA loans have been challenged by plaintiffs' occupying essentially the same status as the Alabama Power Company occupies here and for basically the same reasons that the Alabama Power Company advances here, there is no standing to challenge the loans in a judicial proceeding. Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924, cert. denied 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780; Alabama Power Company v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L. Ed. 374; Tennessee Electric Power Company v. T. V. A., 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543, and Duke Power Company v. Greenwood, 302 U.S. 485, 58 S. Ct. 306, 82 L.Ed. 381. In this connection, the Circuit Court in Kansas City Power & Light Co. v. McKay stated:

"The statutory scheme now before us clearly contemplates Congressional, rather than judicial, review of the governmental activities here in question, all of which are non-regulatory. * * * The continuance of defendants' activities here complained of is therefore subject to review by Congress acting each year on the appropriations sought by the defendants."

In the Kansas City Power & Light Co. case, the United States Court of Appeals for the District of Columbia, in denying the right of electric utility companies to attack government financed competition, stated:

"It is indisputable that the essence of plaintiffs' complaint is the competition which they will suffer if the Government's contracts are carried out. They can claim no other interest or injury. The defendants have not undertaken to regulate them in any way. They have not been ordered to abandon any of their activities or to forego the expansion programs planned by them. They have not been subjected to any obligation or duty. Their sole interest and objective is to eliminate the competition which they fear. Controlling decisions of the Supreme Court, dealing with other electric power con-

tracts of the Federal Government, establish that an interest of this kind is not sufficient to enable them to sue to enjoin execution of the power contracts and program of the Government. * * *"

There have been numerous efforts since Kansas City Power & Light Co. v. McKay, supra, by public utilities such as the Alabama Power Company to distinguish cases that are factually the same as the case now presented to this Court from the Kansas City Power & Light Co. v. McKay doctrine. In this connection, see Iowa-Illinois Gas and Electric Company v. Benson, et al., 247 F.2d 22, cert. denied, 356 U.S. 949, 78 S.Ct. 913, 2 L. Ed.2d 842, and Pennsylvania R. Co. v. Dillon, 118 U.S.App.D.C. 257, 335 F.2d 292, cert. denied, American-Hawaiian S. S. Co. v. Dillon, 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543. In each instance where the public utility claimed a competitive injury, as the Alabama Power Company does in this case, and sought to base its standing for judicial relief on either the Administrative Procedures Act,[2] the allegation that the action of the REA was arbitrary and capricious, that the action in securing contracts for the purpose of guaranteeing the repayment of the loan constituted a restraint of trade in violation of the Sherman Antitrust Act and the Clayton Act, or that the action of the officials of the REA and the cooperatives securing the loan constituted an illegal combination or conspiracy, such contentions have been fully dealt with by the courts concerned and found to be without merit. Kansas City Power & Light Co. v. McKay, supra; Alabama Power Company v. Ickes, supra; Tennessee Electric Power Company v. T. V. A., supra; Duke Power Company v. Greenwood, supra; Iowa-Illinois Gas and Electric Company v. Benson, et al., supra; Pennsylvania R. Co. v. Dillon, supra. Likewise, the argument of unconstitutionality advanced in this case by the Alabama Power Company is based upon the contention that the loan if consummated would violate the due process clause of the Fifth Amendment to the Federal Constitution. This is the same argument that was rejected by the Supreme Court of the United States in Alabama Power Company v. Ickes, supra, and Tennessee Power Company v. T. V. A., supra.

The Alabama Power Company in this case strongly emphasizes its antitrust theory and argues strenuously in support thereof. The action being taken by this Court in dismissing the Alabama Power Company's case for the reason that that company has no standing under the facts in this particular case to maintain this action against these defendants is particularly appropriate insofar as the antitrust argument is concerned. In this connection, see Eastern Railroad Presidents Conference, et al. v. Noerr Motor Freight, Inc., et al., 365 U.S. 127, 81 S. Ct. 523, 5 L.Ed.2d 464, wherein the Supreme Court of the United States stated:

"* * * the Sherman Act forbids only those trade restraints and monopolizations that are created, or attempted, by the acts of 'individuals or combinations of individuals or corporations.' Accordingly, it has been held that where a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action, no violation of the Act can be made out. These decisions rest upon the fact that under our form of government the question whether a law of that kind should pass, or if passed be enforced, is the responsibility of the appropriate legislative or executive branch of government so long as the law itself does not violate some provision of the Constitution."

In this connection, see also United States v. Rock Royal Co-operative, Inc., 307 U. S. 533, 59 S.Ct. 993, 83 L.Ed. 1446, and Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315.

2. 5 U.S.C.A. § 1001 et seq.

For the foregoing reasons, a formal order will be entered denying the motion of the Alabama Power Company for a preliminary injunction and granting the motions of the defendants to dismiss this action.